# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 16, 2015

Plaintiff-Appellee,

v

No. 318572
Macomb Circuit Court

MICHAEL JOSEPH LOUKAS,

LC No. 2012-003522-FH

Defendant-Appellant.

Before: HOEKSTRA, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of first-degree home invasion, MCL 750.110a(2)(b). He was sentenced as a habitual offender, fourth offense, MCL 769.12, to serve a prison term of to 20 years to 40 years. Defendant appeals by right, and we affirm.

## I. FACTS

Katieva Shipp testified that around 11:00 a.m. or 11:30 a.m. on June 29, 2012, she and her daughter were lying in bed when she heard the sound of "change" and "flip-flops" coming from the living room area of her home. Shipp testified that she got out of bed, picked up a vase that was on the side of her dresser, and "peeked around the corner." She testified that she saw a man standing by her bathroom door, they looked at each other, she screamed, and the man ran away. A neighbor called the police, and Shipp talked to the dispatcher. Shipp told the dispatcher that the suspect wore a turquoise tank top, shorts, flip-flops, and had long hair. Center Line Police Department Detective Curt Winn, who was dispatched to the scene, testified that he observed a man, defendant, wearing a turquoise tank top standing and then walking on the grass outside of Shipp's property. In court, Shipp identified defendant as the man she saw inside her house.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied effective assistance of counsel where his trial attorney failed to investigate and present the defense of involuntary intoxication. Defendant

-1-

sought remand for the purpose of holding a *Ginther*[1] hearing on this issue, and we granted the motion. *People v Loukas*, unpublished order of the Court of Appeals, entered August 21, 2014 (Docket Nos. 318572). On remand, after an evidentiary hearing, the court concluded there was no evidence that defendant took any drugs. The trial court also concluded that even if defendant presented the defense of involuntary intoxication, it would more than likely have failed because defendant voluntarily took Thorazine after reading about its possible side effects.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id.* "This Court reviews a trial court's factual findings for clear error and reviews de novo questions of constitutional law" *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859, amended on other grounds 481 Mich 1201 (2008). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *Id.* at 130.

"To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id.* at 81. "A defendant may meet this burden even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012) (internal quotation marks and citation omitted).

Defendant's trial counsel admitted at the *Ginther* hearing that she "had no strategic reason not to raise the defense." Counsel admitted that she never actually researched the involuntary intoxication defense, instead relying on her recollection of its parameters. She indicated that her understanding of the defense was that it applied where a person did not knowingly consume a substance. This is inaccurate. The defense actually requires voluntary consumption. See MCL 768.37.[2] Defendant testified that he took Thorazine on the day in

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] The statute provides as follows:

> (1) Except as provided in subsection (2), it is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor, drug, including a controlled substance, other substance or compound, or combination of alcoholic liquor, drug, or other substance or compound.

> (2) It is an affirmative defense to a specific intent crime, for which the defendant has the burden of proof by a preponderance of the evidence, that he or she voluntarily consumed a legally obtained and properly used medication or

question, and he produced his prescriptions. Thus, he presented evidence that he voluntarily consumed a legally obtained medication, as required by the intoxication defense.

An expert knowledgeable about the use and effects of Thorazine explained that aside from its intended effect, Thorazine has "quite a few other effects," including "anticholinergic effects" such as "a lot of sedation" and "an effect on the memory." The expert also testified that Thorazine has "an effect on orientation and the ability to think straight." She opined that there would be no reason for a patient to expect to experience a side effect in the absence of advice from a doctor. Defendant testified that he read of the side effects of Thorazine, but did not expect them to occur. He denied that his doctor talked with him about the side effects of Thorazine when he prescribed it. Accordingly, the trial court erred when it determined that defendant did not present evidence to establish the elements of the intoxication defense.

Nonetheless, defendant cannot establish the requisite prejudice. Defendant argues that there might have been a different outcome had the jury heard that he took Thorazine for the first time and heard about its side effects. A different outcome would be possible if the jury found defendant to be credible and believed his testimony. However, as plaintiff argues, had defendant taken the stand and testified about his alleged intoxication, he would have opened the door to evidence about his prior convictions for breaking and entering under MRE 404(b). Such evidence would be highly inculpatory.

## III. THE CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE

Defendant argues that the trial court denied his constitutional right to present a defense in an off-the-record ruling that forbid his trial counsel from presenting the intoxication defense. This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

"There is no question that a criminal defendant has a state and federal constitutional right to present a defense." *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984). However, "[a]lthough the right to present a defense is a fundamental element of due process, it is not an absolute right." *Id*. at 279. "The accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. (internal quotation marks and citation omitted).

There was contradictory testimony at the *Ginther* hearing regarding whether the trial court made an off-the-record ruling forbidding defense counsel from presenting the intoxication defense. The prosecutor cited a motion he made to support his assertion that the court forbade defense counsel from raising the intoxication defense:

> Your Honor, while we're killing time, I was going to make a motion in limine just to double check, because of the way the case was transpired up until today, and then the statements at right before we broke for lunch, it was my

other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired.

understanding that counsel always had a, was going to proceed with the defense, the affirmative defense of intoxication. Given the way we wrapped up this morning, and the people calling two witnesses, and the defense not calling witnesses, I'd ask that if in some way counsel wants to get into that defense through the officer in charge, as he testifies, that would be improper questions on his part. So if she's consistent with the way she wanted to defend this case leading up until today, at least the representations to the people, I don't know how she's going to do that with the two witnesses that we're calling and calling no witnesses.

The prosecutor asked defense counsel if she remembered him making the motion at trial, and counsel indicated that she did remember it. The prosecutor also asked defense counsel if he had provided an accurate summary of what happened at trial, and defense counsel replied that it was correct.

Immediately after the prosecutor made his motion in limine, the following exchange occurred:

*Defense counsel*: I don't know what he's talking about, Your Honor.

*The court*: I don't think there'd be expert opinion, but she could certainly question as to his state of mind.

*Prosecutor*: Exactly.

*The court*: Okay.

*Defense counsel*: And I've already, I don't know what he's talking about. He, we talked about it yesterday, he brought it up this morning, I said it's not an issue. If it was, I'd raise it with the prosecutor and the court.

*The court*: I guess we'll go with it's not an issue.

*Defense counsel*: And I already told him that. So, I mean, I think he should probably get past it. It's not happening.

*The court*: Okay. It was brought up yesterday in chambers.

*Defense counsel*: Exactly, and I, he brought it up before we went to lunch, and I told him—

*The court*: Okay. Well, now—

*Defense counsel*: Well, I, I think if we could check the record, I think I told him that it was not going to be part of my case.

*The court*: Okay. We're clear then.

-4-

*Prosecutor*:  Very good.  Thank you, Judge.

*Defense counsel*:  Crystal.

The prosecutor's motion and the subsequent discussion do not directly evidence any ruling by the court regarding the involuntary intoxication defense.  At best, the discussion shows that the parties discussed the intoxication defense in judicial chambers, and the court might have made a ruling at that time.  However, if the court made a ruling forbidding defense counsel from raising the intoxication defense as the prosecutor claimed, then it is unclear why the prosecutor thought that counsel "was going to proceed with the . . . affirmative defense of intoxication."  Additionally, defense counsel later testified that her understanding of the judge's off-the-record ruling was that evidence of defendant's medication would not be allowed because she failed to lay a foundation for it.  Thus, there is no evidence that the trial court denied defendant the right to present his defense.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Patrick M. Meter